**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| JOE HAND PROMOTIONS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:10-cv-00450-TWP-DML |
| | ) | |
| THOMAS EDWARD ABRELL, Individually and d/b/a KILGORE SPORTS BAR, | ) | |
| | ) | |
| Defendants. | ) | |

**ENTRY ON MOTION FOR DEFAULT JUDGMENT AND DAMAGES**

Plaintiff Joe Hand Promotions, Inc. ("Joe Hand") filed this action after Defendants Thomas Edward Abrell ("Mr. Abrell"), individually and *doing business as* Kilgore Sports Bar (collectively, "Defendants"), knowingly and willfully violated the law by intercepting and broadcasting the "Ultimate Fighting Championship 83" – a mixed martial arts match between Matt Sera and Georges St. Pierre II. A Clerk's entry of default has been entered against the Defendants. *See* Fed. R. Civ. P. 55(a). Now, Joe Hand asks this Court to enter default judgment against the Defendants and award damages. *See* Fed. R. Civ. P. 55(b). Defendants have responded to this latter request in a thorough and persuasive fashion. The Court's decision is set out below.

**I. BACKGROUND**

Joe Hand possessed exclusive nationwide commercial distribution rights to the closed-circuit broadcast of the "Ultimate Fighting Championship 83", as well as the power to sublicense the broadcast to authorized commercial establishments. On April 19, 2008, Matt Serra and Georges St. Pierre squared off in a highly-anticipated mixed martial arts rematch. Prior to the

match, the two fighters exchanged harsh words, with Serra calling St. Pierre, who resides in Montreal, Canada, "Frenchy" and telling him to "[d]rink your red wine, go to your hockey game and shut up." Neil Davidson, *Retooled St. Pierre keen on overturning loss to Serra*, ESPN MIXED MARTIAL ARTS, http://sports.espn.go.com /extra/mma/news/story?id=3346125, April 17, 2008 (last visited June 20, 2012). Notwithstanding Serra's blustery trash talk, St. Pierre had the last laugh, prevailing in a second round TKO. *See* Matt Sera, WIKIPEDIA, http://en.wikipedia.org/ /wiki/ Matt_Serra (last visited June 20, 2012). By all accounts, it was an exciting and highly competitive match.

Kilgore Sports Bar, a Muncie, Indiana bar owned and staffed by Mr. Abrell, was not an authorized commercial establishment, yet it illegally intercepted and transmitted the fight. To protect and enforce its commercial interests in broadcasts (like the Serra versus St. Pierre UFC showdown), Joe Hand deploys investigators to travel to different commercial establishments to determine whether the program is being shown without proper authorization. Here, Mariangella Glaze submitted an affidavit to the Court testifying that she entered Kilgore Sports Bar on the night of the fight just before midnight, ordered a beer, and watched the fight. Notably, the bar did not charge a cover fee to enter the premises, was only showing the fight on one of its three televisions, and there were only "10-15 people in the establishment and it was less than ¼ to capacity," (Dkt. 25-3 at 2), meaning the bar could only hold a total of around 50 people. Additionally, Mr. Abrell has submitted an affidavit swearing that the bar did not advertise the showing of the fight.

On April 16, 2010, Joe Hand filed this lawsuit, alleging violations of § 553, § 605, and a state law claim for conversion. Mr. Abrell failed to answer the Complaint, and on September 7, 2010, the clerk issued an Entry of Default as to the Defendants (Dkt. 17). Later, this Court

rejected Defendants' request to set aside the entry of default. (Dkt. 23.) Now, Joe Hand asks the Court to enter default judgment against Mr. Abrell *individually* and *d/b/a* Kilgore Sports Bar and to award Joe Hand damages. For this serious, albeit relatively minor, transgression, Joe Hand seeks a sum of $110,750.00. (Dkt. 25-4.) Under the circumstances, this requested punishment is wildly disproportionate to the crime. Notably, the last time Kilgore Sports Bar turned a profit was in 2008, when it made a grand total of $2,050.00. In 2009, Kilgore Sports Bar reported a net loss of $12,839.00, and in 2010 it reported a net loss of $12,825.00. Presently, Mr. Abrell still owns Kilgore Sports Bar, but he currently does not operate it and is actively seeking to sell it.

## II. RELEVANT LAW

As an initial matter, the Court pauses to make two findings. First, given the posture of this case, default judgment is appropriate. As Defendants noted, "[b]ecause the underlying facts in this case are deemed admitted pursuant to a prior entry of default," only damages are at issue. (Dkt. 31 at 11.) Thus, the Court will grant Joe Hand's request for entry of default judgment. Second, Joe Hand's state law conversion claim is not viable. *See Joe Hand Promotions, Inc. v. Hurley*, 2011 WL 6727989, at *2 (S.D. Ill. Dec. 21, 2011) (plaintiff cannot assert a state law claim for conversion *in addition to* stating claims under § 553 and § 605 damages) (citing *Joe Hand Promotions, Inc. v. Lynch*, 2011 WL 5386358, at *3-5 (N.D. Ill. Nov. 7, 2011)); *see also Time Warner Cable of New York City v. Googies Luncheonette, Inc.*, 77 F. Supp. 2d 485, 491 (S.D.N.Y. 1999) (denying plaintiff relief for claims under New York law, as granting separate relief under these laws would "violate the general principle that precludes double recovery"). Although these cases apply Illinois and New York law, the Court finds their reasoning sound. Moreover, the scant Indiana authority found by the Court also calls into doubt the viability of

Plaintiff's conversion claim. *See DirecTV, Inc. v. Beecher*, 296 F. Supp. 2d 937, 944 (S.D. Ind. 2003) ("DirecTV's claims for theft and conversion of satellite broadcasts are preempted.").

Turning to the federal claims, Joe Hand alleges violations of 47 U.S.C. §§ 553 and 605. Joe Hand is not allowed to simultaneously pursue relief under both statutes because they target two distinct types of piracy. *See J & J Sports Productions, Inc. v. Aguilera*, 2010 WL 2362189, *2 (N.D. Ill. June 11, 2010). Basically, § 553 applies to cable transmissions, while § 605 applies to satellite transmissions. Obviously, given the procedural posture of this case, Joe Hand cannot, and need not, conduct discovery to figure out how Defendants illegally broadcasted the fight. Therefore, neither the Court nor Joe Hand can pinpoint which statute should be applied. Where, as here, Joe Hand cannot isolate the precise means of piracy employed by Defendants, the Court will accept Joe Hand's request to proceed under § 605. *See Aguilera*, 2010 WL 2363189, at *2.

Under § 605(a), a plaintiff may elect actual damages or statutory damages. *See* 47 U.S.C. § 605(e)(3)(C)(i)(I)-(II). Courts have discretion to award statutory damages ranging from a minimum of $1,000.00 to a maximum of $10,000.00. *Id*. Here, Joe Hand requests a statutory damages award of $10,000.00. Courts need not abide by a rigid formula when setting statutory damages. Some courts use a formula based on the number of patrons present; others award a flat sum per violation. *Compare Time Warner Cable v. Taco Rapido Rest.*, 988 F. Supp. 107, 111 (E.D.N.Y. 1997) (awarding a statutory damages award of $50.00 per patron) *with Kingvision Pay-Per-View Ltd. v. Gadson*, 2007 WL 2746780, at *2-3 (M.D.N.C. Sept. 18, 2007) (awarding $10,000.00 in statutory damages). Given that relatively few patrons (10-15) watched the fight, Joe Hand urges the Court to adopt the "flat-sum" approach. The Court will heed this request. After all, sub-licensing fees are typically based on the *occupancy* of the establishment; thus, calculating statutory damages using the actual number of patrons typically understates damages.

Nonetheless, for the reasons set out above – including Kilgore Sports Bar's precarious financial state – the Court in its discretion will award the minimum of $1,000.00. This statutory damages calculation also aligns with common sense, as only 15 people watched the fight. If each person purchased the fight from the comfort of their own home at a cost of $50.00 per person, Joe Hand would have received $750.00 in total revenue. Accordingly, a $1,000.00 statutory damages award is appropriate.

Joe Hand also seeks enhanced damages for willful violations under Section 605(e)(3)(C)(ii). That section permits enhanced damages of up to $100,000.00, in the discretion of the Court, where the defendant has exhibited disregard for the governing statute and indifference to its requirements. With respect to enhanced damages, the evidence submitted to the Court indicates knowing and willful behavior. Although Mr. Abrell did not charge a cover or advertise the event, he illegally showed the fight; in doing so, he perhaps bolstered Kilgore Sports Bar's reputation as a place to watch highly-anticipated fights.

In considering how much to award in enhanced damages, courts look to a range of factors, including: (1) the number of violations; (2) defendant's unlawful monetary gains; (3) plaintiff's actual damages; (4) whether defendant advertised for the event; and (5) whether defendant collected a cover charge on the night of the event. *Kingvision Pay-Per-View, Ltd. v. Rodriguez*, 2003 WL 548891, at *2 (S.D.N.Y. Feb. 25, 2003). Every factor cuts in the Defendants' favor. The Court has no evidence that Defendants are repeat violators; there was no cover charge or advertising; there is no evidence of unlawful monetary gains; and there is no evidence of Joe Hand's actual damages. And given the fact that Kilgore Sports Bar is in dire financial straits and few people actually watched the fight, it is hard to fathom that it reaped a

windfall by showing the mixed martial arts match. In short, all of these factors cut in favor of a *de minimis* award.

But, in addition to these factors, courts must also consider the deterrent effect of the award, with an eye toward imposing an award that is substantial enough to discourage future lawless conduct, but not so severe that it seriously impairs the viability of the defendant's business. *See, e.g.*, *Garden City Boxing Club, Inc. v. Polanco*, 2006 WL 305458, at *5 (S.D.N.Y. Feb. 7, 2006). Here, the deterrence consideration is subject to extenuating circumstances, as Mr. Abrell is "actively seeking to leave the bar business and is working diligently to transfer ownership." (Dkt. 31 at 11). This fact reinforces that a *de minimis* enhanced damages award is appropriate. However, as Joe Hand notes in its reply, deterrence is not limited to specific deterrence. General deterrence – the need to send a deterrent signal to other would-be offenders – is also very important. The Court finds that, balancing these considerations, an award of $1,500.00 in enhanced damages is appropriate, bringing the total damages award to $2,500.00.00.

Under similar circumstances, other district courts have awarded similar amounts. *See, e.g.*, *J&J Sports Prods. v. Schrader Rest. Corp.*, 485 F. Supp. 2d 422 (S.D.N.Y. 2007) (awarding $1,200.00, not including costs and attorney's fees, where defendant illegally showed a broadcast on one television at a time when four patrons were in the establishment). Moreover, the Court would be remiss not to mention that it takes these issues seriously, and has not hesitated to level serious monetary penalties in previous cases. *See J & J Sports Productions, Inc. v. McCausland*, 2012 WL 113786 (S.D. Ind. Jan. 13, 2012) (awarding $40,000.00 plus costs under similar circumstances). But here, Defendants have made a persuasive argument why damages should be limited.

Finally, under 47 U.S.C. § 605(e)(3)(B)(iii), Joe Hand, as a prevailing party, "shall" recover "full costs, including . . . reasonable attorneys' fees." However, Joe Hand has not submitted any evidence establishing its costs, and the briefing of this case has been somewhat careless. For instance, in its opening brief in support of default judgment and damages, Joe Hand repeatedly and mistakenly suggests that this case is in the Tenth Circuit Court of Appeals (Dkt. 26 at 7) ("the requirements of . . . the Tenth Circuit have been satisfied" and noting the "Tenth Circuit require[ment] that there be both personal and subject matter jurisdiction over the Defendant"). Even more curiously, Joe Hand misnames itself in its own statement of facts, claiming that the plaintiff in this action is J & J Sports Production, Inc. Additionally, in its proposed order, Joe Hand seeks $110,000.00 for violations of federal law and an additional $750.00 for the tort of conversion. Confusingly, Joe Hand then seeks a *total* of $110,000.00. It is apparent that much of Joe Hand's briefing included some copy-and-paste work.[1] While Joe Hand's reply brief (Dkt. 34) is much better, it still has not persuaded the Court that a large damages award is appropriate. And, under the circumstances, the Court will not go out of its way to award Joe Hand costs and attorney's fees where no evidence supporting such an award has been furnished.

**III. CONCLUSION**

In short, Defendants have made compelling argument that a relatively small damages award is appropriate under the circumstances. Defendants' effort to place Joe Hand's damages request in context distinguishes the present case from the Court's prior order in *McCausland*, 2012 WL 113786 (awarding $40,000.00 plus costs under similar circumstances). For the reasons

[1] Of course, there is nothing inherently wrong with copying and pasting, as there is often no need for a party to reinvent the wheel. However, when doing so, it is important to tailor otherwise formulaic argument to the Court where the case sits and to get one's client's name right.

set forth above, the Court enters a default judgment for Joe Hand and against Defendant in the amount of $2,500.00. A separate default judgment will accompany this Entry.

SO ORDERED.

Date: 06/27/2012

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Robert D. Emmerson
DEFUR VORAN LLP
remmerson@defur.com, tepperson@defur.com

Thomas P. Riley
LAW OFFICES OF THOMAS P. RILEY
tprlaw@att.net